IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-00909-PAB

BOARD OF TRUSTEES, SHEET METAL WORKERS' LOCAL 9 PENSION TRUST,
BOARD OF TRUSTEES, COLORADO SHEET METAL WORKERS' LOCAL 9 HEALTH FUND,
JOINT APPRENTICESHIP AND TRAINING COMMITTEE, COLORADO SHEET METAL WORKERS TRAINING FUND,
SHEET METAL WORKERS' LOCAL 9 VACATION FUND,
COLORADO SHEET METAL INDUSTRY FUND, and
SMACNA COLORADO DRUG TESTING FUND,

    Plaintiffs,

v.

CERTIFIED BALANCING AND COMMISSIONING LLC,

    Defendant.

# ORDER

This matter comes before the Court on Plaintiffs' Motion for Default Judgment [Docket No. 16]. On May 20, 2024, the Clerk of Court entered default against defendant Certified Balancing and Commissioning LLC ("Certified Balancing"). Docket No. 12.

## I.    FACTS[1]

The International Association of Sheet Metal, Air, Rail, and Transportation Workers' Local ("Local 9") is a collective bargaining agent for a unit of Certified

---

[1] Because of the Clerk of Court's entry of default against the defendant, *see* Docket No. 12, the well-pled allegations in plaintiffs' complaint, Docket No. 1, are deemed admitted. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

Balancing's sheet metal employees. Docket No. 1 at 4, ¶ 13. Local 9 and Certified Balancing are parties to a collective bargaining agreement ("CBA"). *Id*. at 5, ¶ 14.

Pursuant to the CBA, Certified Balancing is required to contribute to the following funds on a monthly basis: the Board of Trustees of the Sheet Metal Workers' Local 9 Pension Trust (the "Pension Fund"), the Board of Trustees of the Colorado Sheet Metal Workers' Local Health Fund (the "Health Fund"), the Training Committee of the Colorado Sheet Metal Workers (the "Training Fund"), Colorado Sheet Metal Industry Fund (the "Industry Fund"), the Sheet Metal Workers' Local 9 Vacation Fund (the "Vacation Fund"), and the SMACNA Colorado Drug Testing Fund (the "Drug Testing Fund") (collectively, "the CBA Funds"). *Id*., ¶ 16. The Pension Fund, Local Health Fund, and Training Fund are each a "multiemployer plan" under ERISA, 29 U.S.C. § 1002(3), and have been maintained pursuant to the Labor Management Relations Act ("LMRA") 29 U.S.C. § 186(c)(5). *Id*. at 3-4, ¶ 7. The Vacation Fund, Industry Fund, and Drug Testing Fund are not governed by ERISA. *Id*. at 4, ¶ 9. The Boards of Trustees for the Pension Fund, Health Fund, and Training Fund (collectively, the "Employee Retirement Income Security Act Funds ('ERISA') funds") are fiduciaries (collectively, the "Boards of Trustees") within the meaning of the ERISA, 29 U.S.C. § 1002. *Id*. at 3, ¶ 6.

The CBA requires that, no later than the twentieth day of each month, Certified Balancing must transmit remittance reports to the CBA Funds that report the number of hours worked by each covered employee, which is necessary to calculate the amount of contributions that Certified Balancing owes. *Id*. at 5, ¶ 17. No later than the twentieth day of each month, Certified Balancing must pay its contributions and, if payments are not received by the fifth day of the following month, it is delinquent on its payments. *Id*.

2

at 5, 7, ¶¶ 17, 25.  In the event that Certified Balancing is delinquent on its obligations, Certified Balancing is liable for the costs and penalties provided for in the CBA, which include interest, liquidated damages, and all costs of collection including reasonable attorney's fees and accounting fees.  *Id*. at 6, ¶ 20.  Specifically, Certified Balancing is liable for interest at the rate of 10% annum and liquidated damages at the rate of 20% on its delinquent contributions pursuant to the collection policy of each ERISA fund, which "provides terms of the CBA."  *Id*. at 7, ¶¶ 25-26.

      The CBA states that Certified Balancing is bound to the provisions of the Agreement and Declaration of Trust of each of the CBA Funds (the "Trust Agreements") and all regulations and rules adopted by the CBA Funds' respective Board of Trustees. *Id*. at 5, ¶ 18.  Certified Balancing is required to retain payroll records of and permit auditors, as authorized by the Boards of Trustees to inspect Certified Balancing's payroll records to ensure compliance with Certified Balancing's obligations under the CBA.  *Id*. at 5-6, ¶ 19.  Pursuant to the Trust Agreements, the Boards of Trustees have the "authority at any time to have an audit made by independent certified public accounts retained by the Board of Trustees to perform payroll audits of the Employers to determine whether or not to correct amount of Contributions were made."  *Id.* at 6*,* ¶ 21.  Furthermore, the Trust Agreements require Certified Balancing to "make available its records" that are connected to a "request for an audit or examination of records."  *Id*., ¶ 22.  If Certified Balancing refuses to provide such records, the Boards of Trustees are authorized to "institute suit to compel a payroll audit and the Employer will be liable for the costs of the suit, including attorney's fees."  *Id*., ¶ 23.  If an "audit discloses unreported contributions in excess of ten percent (10%) of those contributions

3

previously reported during the period of time being audited, the Employer shall be liable for and shall pay to the Fund the reasonable cost of such examination or audit." *Id.*, ¶ 24.

The Boards of Trustees selected Certified Balancing for an audit of its payroll records for the period of January 1, 2019 to December 31, 2021 (the "Audit Period"). *Id.* at 8, ¶ 31. Through a sample audit, a prior payroll auditor determined that Certified Balancing failed to make contributions to the CBA Funds in the total amount of $22,075.63. *Id.*, ¶ 32. Based on the sample audit, plaintiffs conducted a "full scope Payroll Audit" for the Audit Period. *Id.*, ¶ 33. Certified Balancing has failed to comply with the payroll audit. *Id.* at 9, ¶¶ 34-35. On December 22, 2023, plaintiffs sent a demand letter ordering Certified Balancing to comply with the payroll audit and provide written confirmation of its intention to comply by January 4, 2024. *Id.*, ¶ 35. The demand letter was sent by certified mail; however, it was returned to plaintiffs because Certified Balancing did not claim the letter. *Id.*, ¶ 36. Plaintiffs did receive a read receipt indicating that an email sent to defendant, with the letter attached, was read by defendant on January 3, 2024. *Id.*; Docket No. 16-3 at 3, ¶ 7 (citing Docket No. 16-3 at 13). Certified Balancing did not confirm in writing by January 4, 2024 that it would comply with the payroll audit. Docket No. 1 at 9, ¶ 37. In addition to the delinquent contributions identified by the payroll audit, Certified Balancing has "at times, otherwise been delinquent in reporting the work performed by its covered employees and/or in paying the corresponding contributions to the Funds." *Id.*, ¶ 38.

On April 4, 2024, plaintiffs filed this case, bringing claims under ERISA, 29 U.S.C. § 1132, and the LMRA, 29 U.S.C. § 185. *Id.* at 10-13, ¶¶ 40-65. The Boards of

4

Trustees for the ERISA Funds bring two claims under ERISA, while all plaintiffs bring claims under the LMRA, 29 U.S.C. § 195, for breach of labor contract, and under the LMRA, 29 U.S.C. § 185, to compel the payroll audit. *Id*. The Boards of Trustees for the ERISA Funds bring a claim under ERISA, 29 U.S.C. § 1132(g)(2), to recover Certified Balancing's delinquent contributions to the Pension Fund, Health Fund, and Training Fund. *Id*. at 11-13, ¶¶ 53-62. The Boards of Trustees for the ERISA Funds bring a claim under ERISA, 29 U.S.C. § 1132(a)(3)(B), to compel the payroll audit. *Id*. at 10, ¶¶ 40-47.

On April 24, 2024, plaintiffs' process server served Certified Balancing's registered agent, Daniel B. Kelley Attorney at Law LLC, at 822 7th Street, Suite 530, Greeley, Colorado 80631 through Hannah Miller, Mr. Kelley's legal assistant, who plaintiffs claim is "authorized to accept service on behalf of Daniel B. Kelley Attorney at Law, LLC." Docket No. 5. On May 20, 2024, the Clerk of Court entered default against Certified Balancing. Docket No. 12. On July 8, 2024, plaintiffs filed the instant motion for default judgment. Docket No. 16. Certified Balancing has not entered an appearance in this case.

II. **LEGAL STANDARD**

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55. First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b). *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

5

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2022 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id*. A court need not accept conclusory allegations. *Moffett v.*

6

*Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

To obtain a default judgment for a sum certain, the plaintiff must show the following by affidavit. First, that the party in default is (1) not a minor or an incompetent person, (2) is not in military service, and (3) has not made an appearance. D.C.COLO.LCivR 55.1(a)(1). Second, that the sum is certain or the sum can be made certain by computation. D.C.COLO.LCivR 55.1(a)(2). Additionally, the plaintiff must submit a proposed form of judgment that shows (1) the party in favor of whom judgment shall be entered, (2) the party against whom judgment shall be entered, (3) the sum certain amount consisting of the principal amount, prejudgment interest, and the rate of post judgment interest, and (4) the sum certain of attorney fees. D.C.COLO.LCivR 55.1(b).

### III. ANALYSIS

#### A. <u>Jurisdiction</u>

Before entering default judgment, the Court must determine whether it has subject matter jurisdiction over the case and personal jurisdiction over the defendant. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

##### 1. *Subject Matter Jurisdiction*

Plaintiffs state that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331. Docket No. 1 at 3, ¶ 2. Pursuant to 28 U.S.C. § 1331, the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Court has subject matter jurisdiction over plaintiffs' ERISA and LMRA claims because they arise under federal law. *See* 29 U.S.C. § 1132; 29 U.S.C. § 185.

##### 2. *Personal Jurisdiction*

Plaintiffs bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). Plaintiffs can satisfy their burden by making a *prima facie* showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court will accept the well-pled allegations of the complaint as true in determining whether plaintiff has made a *prima facie* showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be

established by reference to the complaint, the Court need not look further. *Id.* The plaintiffs, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id.*

Furthermore, proper service is a jurisdictional prerequisite to litigation. *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit."). Without proper service, the Court lacks personal jurisdiction over a defendant. *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992).

### a. Service of Process

Federal Rule of Civil Procedure 4(h) governs the service of corporations, partnerships, and associations. Rule 4(h)(1)(B) provides that a plaintiff may serve process on these entities "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B); see also *Howarth v. TCER, LLC*, 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *3 (D. Colo. Oct. 13, 2021), at *3. In the alternative, a plaintiff may serve an entity "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) allows service to be made "following state law" for either the state where the district court is located or where service is made. Under Colorado law, a plaintiff can effectuate service on limited liability company by delivering a copy to "the registered agent for service as set forth in the most recently filed document in the records of the secretary of state of [Colorado] or of any other jurisdiction, or that agent's secretary or assistant." Colo. R. Civ. P. 4(e)(4). "The Colorado Supreme Court has held that a registered agent may be

served in the same manner as a natural person, namely, at the person's usual workplace, with the person's secretary, administrative assistant, bookkeeper, or managing agent." *Howarth*, 2021 WL 4775270, at *4 (internal quotations and citation omitted). Service must be made upon an "employee whose position presumptively includes delivery of papers to the relevant party." *Goodman Assocs., LLC v. WP Mountain Properties, LLC,* 222 P.3d 310, 317 (Colo. 2010).

Here, plaintiffs' proof of service states that they served "Hannah Miller, Legal Assistant, authorized to accept service on behalf of Daniel B. Kelley Attorney at Law, LLC." Docket No. 5 at 1. For Ms. Miller to be able to accept service on behalf of Daniel B. Kelley Attorney at Law, LLC, plaintiffs must "identify" Ms. Miller "as being the administrative assistant of [Certified Balancing's] registered agent or the administrative assistant of any other individual listed in Colo. R. Civ. P. 4(e)(4)." *Howarth*, 2021 WL 4775270, at *4. Alternatively, plaintiffs must identify Ms. Miller as a secretary, bookkeeper, or managing agent of Daniel B. Kelley Attorney at Law, LLC. *Goodman Assocs., LLC,* 222 P.3d at 317. In sum, plaintiffs do not indicate whether Ms. Miller, as a legal assistant, holds a position that "presumptively includes delivery of papers to the relevant party."[2] *Goodman Assocs., LLC,* 222 P.3d at 317. "[T]he plaintiff bears the burden of proving personal jurisdiction before a default judgment may be entered."

---

[2] Black's Law Dictionary defines "legal assistant" as a "legal secretary," but does not define a "legal secretary." LEGAL ASSISTANT, Black's Law Dictionary (12th ed. 2024). However, the entry for "legal assistant" cross-references to the definition for "paralegal," which is defined as "[s]omeone who has some education in law and assists a lawyer in duties related to the practice of law but who is not a licensed attorney." PARALEGAL, Black's Law Dictionary (12th ed. 2024).

10

*Millman v. State Farm Fire & Cas. Co.*, No. 21-cv-00036-CMA-NYW, 2021 WL 3206308, at *2 (D. Colo. July 29, 2021).

Plaintiffs represent that Ms. Miller is authorized to accept service on behalf of Daniel B. Kelley Attorney at Law, LLC.  This is insufficient.  "[N]either C.R.C.P. 4(e)(1) nor 4(e)(4) indicate that service could be accomplished by serving someone 'authorized to receive service' where that person merely represents the same, nor does the Colorado Supreme Court's ruling in *Goodman Associates* permit such a broad interpretation of the rules."  *Shields v. Duncan*, No. 14-cv-02231-RM-MEH, 2015 WL 3947221, at *3 (D. Colo. June 26, 2015); *see Howarth,* 2021 WL 4775270, at *5 (finding that service was not proper where the proof of service was left with an individual identified as an "admin asst." and the process server "checked the box indicating that [the administrative assistant] is designated by law to accept service on behalf of [the defendant]" because plaintiff failed to identify the administrative assistant as being the administrative assistant of defendant's registered agent or another authorized individual under Colo. R. Civ. P. 4(e)(4)) (internal quotation omitted).

Plaintiffs have not perfected service against Certified Balancing, and the Court therefore lacks personal jurisdiction over Certified Balancing.  Because service on Certified Balancing is "insufficient but curable," plaintiffs will be allowed an opportunity to properly serve Certified Balancing with process.  *See AMG Nat'l Corp. v. Wright*, No. 20-cv-02857-PAB-KLM, 2021 WL 4170459, at *4 (D. Colo. Sept. 14, 2021) (denying motion for default judgment based on improper service and providing time for plaintiff to attempt proper service).  Therefore, within 60 days of the entry of this order, plaintiffs may attempt to serve Certified Balancing pursuant to Fed. R. Civ. P. 4.

IV.  **CONCLUSION**

Therefore, it is

**ORDERED** that Plaintiffs' Motion for Default Judgment [Docket No. 16] is **DENIED without prejudice**.  It is further

**ORDERED** that, within 60 days of entry of this order, plaintiffs may serve Certified Balancing and Commissioning LLC pursuant to Fed. R. Civ. P. 4.

DATED March 7, 2025.

                                                  BY THE COURT:

                                                  PHILIP A. BRIMMER
                                                  Chief United States District Judge